Okay, we'll be hearing three arguments this morning. First one is Appeal Number 13-1357, Arlington Industries, Inc. v. Bridgeport Fittings, Inc. Mr. Anderson, whenever you're ready. May it please the Court. This Court has jurisdiction over this appeal and must reverse the decision of the District Court to find Bridgeport Fittings in contempt. Section 1292C2 provides a clear basis for this Court's jurisdiction. That statute provides a civil action for patent infringement which would otherwise be appealable and is final except for an accounting. Then this Court has jurisdiction. Applying the Court's framework for analysis first set forth in the KSM decision some years ago by Judge Newman, the first question is, is this a finding of infringement? Here the District Court found contempt, which is this Court's precedence of indicated in So the first prompt is met. Second, and this is the critical one. Isn't the question whether or not this is an appeal from an infringement case or from a contempt order? That is a distinction without a difference, Your Honor. Well, when you read the statute quickly and you said something would otherwise be subject to an appeal, under the Supreme Court jurisprudence, as I understand it, a contempt order that is not a final judgment is not appealable. Your Honor, I would respectfully disagree. You disagree with the Supreme Court case? No, I disagree with your interpretation of the situation here. In this case, there has been a sanction imposed, in effect. Attorney's fees and damages have been awarded. The quantification of those amounts have been left for later determination and remain pending. What happens if the answer is zero? I'm sorry? What happens if the quantification is zero? It's still appealable now. No. Has there been a sanction? Certainly there's been a sanction, in effect, because there's been a finding of contempt and Bridgeport has been laboring under an injunction for the last 11 months. But could you answer Mr. Clevenger's question? You had the contempt order, and then there's supposed to be a sanction that follows that contempt order, right? Well, the sanction has, in effect, that there will be attorney's fees and damages in an amount to be determined, awarded, has been imposed. There's no question about that. It's just a question of quantification. Have you paid anything? Not yet. What's your injury? The injury certainly is the finding of contempt and the injunction. But that injury was deemed insufficient in the Supreme Court case. That was when the Supreme Court was like 100 years ago, right? But in that Anderson case, Your Honor, there had not been a holding of contempt yet. The order that was appealed from was simply an order directing the, if you will, opposing parties to answer questions and produce documents. The language in the Supreme Court opinion is that the judgment isn't personal to you until the sanction is actually imposed. And there had been no finding. The matter becomes personal. There had been no finding of contempt at that point in that case, Your Honor. In the Anderson case in 1906, the order, there was simply an order from the district court directing the defendants to answer questions and produce documents. There had not been the next step of them refusing to answer and being held in contempt. And that is the... Let him go ahead and punish him for contempt. I'm sorry? And once the punishment is issued, then it becomes personal. Yes. But in the case, there had not yet been, and that was what was lacking. It was one step removed from the situation here. In that case in 1906, the defendant had not yet... Well, the subsequent case law in the other circuits as well as in this circuit hasn't made that fine distinction. They said when there has been a contempt order, as there has been here, but there has not been an actual imposition of sanctions, then you don't have a final judgment. Well, but here we have 1292C2, which is specific to this court, and... That says if it's otherwise appealable. Yes. I would agree with you that if this were not a contempt order, then you'd certainly be in D2, there'd be no question about it. The court's decisions in KSM and the statement in LMK indicate that the fact that there is a contempt order in favor of the patentee causes this case to fall within the first prong of 1292C2. You're not hinging your entire argument on jurisdictional in D2, though, are you? No. We also have C1. Let me ask a different question. What's going on right now at the district court? Last year there was a contempt order. Now what's been going on? We're still in the midst of briefing on the issues of the amount of quantification of damages and attorney's fees. So 11 months, almost 12 months removed. We're still, if you will, proceeding in those areas. When is that going to be finished? I have no idea, Your Honor. I can't give you an estimate. I can understand your point of view. You certainly would like to have your appeal here and you'd like to prevail, never having had to pay a penny out of your pocket. I can understand that. And that's what 1292C2 is intended to do. If the action is otherwise appealable. But if you take away the issue of damages, or excuse me, the issue of just leave aside the issue of damages, and so there was an award of attorney's fees, non-quantified, then clearly this would be immediately appealable under 1295. That's how this court in Johanson interpreted it, Majorette, and in light of the Ray Kaluck decision, recent decision from the Supreme Court, which made it clear that distinctions should be ignored in favor of an approach that looks solely to the character of the issue that remains open after the court has otherwise ruled on the merits of the case. But for the damages, if this was just a decision where there was a finding of contempt and an award of attorney's fees in an amount to be later calculated, this would be a final decision and would be immediately appealable under 1295. 1292C2 provides that since it would otherwise be appealable, but for the existence of the accounting, the calculation of damages, then this court has jurisdiction now. And the purpose behind 1292C2 is exactly the type of purpose that should exist here. There's been a decision, finding of contempt, issuance of a new, of a broader injunction, and we're now 12 months, almost 12 months removed without a determination of attorney's fee, a calculation of attorney's fees and a calculation of damages. I understand your argument, but how do we reconcile that with the AVO case? I mean, it says pretty clearly in AVO that contempt orders aren't appealable until final judgment, and we don't have a final judgment. But I think that case, the jurisdiction was based on that there was no modification of the earlier injunction. It was a 1292C1 case. Sure, but it's still a pretty broad statement, and contempt cases, I think it's making a distinction between contempt cases and other patent infringement cases that 1292C2 may apply to. And if that's the rule, that in contempt cases you can't appeal until you have a final judgment, then it doesn't seem to matter whether it's under the modification provision of the jurisdiction or 1292C2. I think that the AVO case, here the difference is there has been a sanction imposed. It may not have been quantified, but the fact that attorney's fees and damages are... It doesn't just say until sanctions imposed. It says until final judgment. I don't see a final judgment here. Well, I understand, but I think we fall within either 1292C2 and 1292C1. Well, I guess that's what I'm asking you. I mean, did the AVO court just not address 1292C2 and you think its broad discussion there can't be applied to that? It did not address 1292C2. It was focused on whether there had been a modification of the injunction under 1292C1. And while I think that there clearly was a modification and a broader injunction here which provides jurisdiction... What happens if we decide there wasn't a modification? Does that affect your appeal from the contempt order? No, because we still have jurisdiction. You still have jurisdiction under 1292C2 because other than... This clearly would be a final decision, and I don't think that trying to draw a distinction between a contempt case and a non-contempt case is appropriate. On your theory, the mere entry of the contempt order would be a form of a sanction. It certainly is. I don't know how... No, but I mean, the problem I have with your position is that you're saying, well, we've got a contempt order, so we've been held in contempt. We're a contemnor. We've been labeled a dirty person, and that's injury. So we ought to be able to appeal. I think the Supreme Court has already said that's not enough, and the other circuits have said that's not enough. But here we have an injunction that's issued against us, and I think that we have to look at the fact that this court has extra jurisdiction under 1292C2. Well, can I ask you about that? Because I find 1292C2 to be kind of an unusual provision because it allows for an appeal before a final judgment, which is typically the rule in all other cases we would hear. You would have to have a final judgment, including damages. So I can see Congress has created for patent cases a special provision, so you don't have to get the accounting. You can come up immediately. But a contempt proceeding isn't just... A contempt proceeding can apply in any kind of injunction, and so why should we be looking at a special patent provision instead of general Supreme Court law on when a contempt order is final? Because this is a specific contempt finding in a patent case. This necessarily involves a finding of infringement once there is a finding of contempt. Well, I understand that, but what I'm a little concerned about is creating a rule for contempt orders in patent cases that's different from contempt orders in any other kind of injunction case. Hasn't the Supreme Court on several occasions corrected this court when it's created special patent rules in applying general principles of law, particularly with regards to... I think there was an injunction case a number of years ago. But 1292C2 is a specific situation for this court. But 1292C2 doesn't say anything about contempt orders. You're asking us to extend it to contempt orders. No, I'm saying it doesn't say... You don't have any precedent one way or another that says 1292C2 applies to a contempt order, do you? Other than this court has considered and allowed appeals from contempt orders where there have been findings of contempt. I mean, if you look at the way that this court has construed KSM and the Johansson case and the Majorette Toys case, if there's a determination of everything but damages, this court has jurisdiction. If there's a determination of everything but attorney's fees, this court has jurisdiction. The argument being made is that you should draw a distinction between contempt cases and non-contempt cases, but in patent cases where it is a separate proceeding that is created that has significant adverse consequences. I mean, when you look at the Ray Hallett case, the Supreme Court there on attorney's fees said, regardless of the source of the attorney's fees award, a decision is final and immediately appealable. And it didn't suggest they weren't drawing the distinctions. There wasn't any line drawings to the source. I mean, it's no different here. I don't think there should be any line drawing in a patent case as to whether it's from contempt or a regular infringement judgment. I don't mean to interrupt you, sir, but you haven't said anything at all about modification of the injunction as a ground for jurisdiction here? Yes. And I thought you might want to say something because if the other side argues it, you want to be able to rebut. Certainly. And certainly this is a modified, the injunction was modified. Why? Pardon? Why? Why? Because it expanded, it applied a new, never before determined claim construction and expanded the scope of the injunction to cover not just the method covered in the 488 patent, but the products and the construction. Why does that matter? Because it completely expands the scope of the injunction. I mean, there was never previously, the limitations that were brought in issue in this contempt proceeding were never an issue before. They were never construed, they were never even raised by the parties. Here for the first time, as a result of Bridgeport's new and different design, there were new limitations in issue, and there was no way for Bridgeport. That's in the AEVOE case, it's the same thing. There was a claim construction there in the district court in the contempt proceeding. Yes. Exactly the same thing. And the would-be contemnor was arguing for a claim construction that would have saved it from contempt, from infringement, and they lost. So we don't see why there's any difference at all here between this case and AEVOE in court. Because there was no, here we have a different claim construction. There was no way for Bridgeport to understand that. There was no way in AVEO for the would-be contemnor to see the claim construction issue. They presented it. The issue was argued. There was a claim construction issue in the heart of the contempt proceeding, just like there is here. And there was... That's a point that was missed in the brief, but it happens to be true. If you look at the district court opinion in AVEOE. I think that here where you have a new claim construction and then the injunction is broadened to cover products in a method patent. But the injunction covered all colorful imitations, and the claim construction was done in that. It may be that the claim construction is wrong and it reached something that's not a colorful imitation, but that doesn't mean the district court was modifying the injunction. He was just improperly interpreting his injunction. I think that when the court broadened the injunction to be directed toward the products and not a method so that Bridgeport can't even practice non-infringing methods, that is a broader injunction. It is a modification of the injunction. But you agree to not... the colorful limitation language. But with respect to a method patent, now the terms of the injunction prohibit us from selling the product regardless of the method that is used. And that provides jurisdiction... Mr. Anderson, you're over your time, but we'll give you a couple minutes. Thank you. Let's hear from the other side. Thank you. May I please the court? Catherine Kloon on behalf of the appellee and patentee Arlington Industries. This court is absolutely correct in the questions asked to my opposing counsel and that the fact that there is no jurisdiction here where the underlying district court's order was a contempt order finding the accused connectors simply to be colorful imitation of the original enjoined infringing connectors and to be infringing that patent but not yet having imposed a sanction for that contempt. Therefore... What is the sanction you're seeking? Yes, Your Honor, there is a sanction that we're seeking in the form of lost profits and attorney's fees. Although the Third Circuit has said that... It sounds a lot in character like the damages and attorney's fees that your opposing counsel were talking about, right? That is correct, Your Honor. However, the Third Circuit is entitled... Under the Third Circuit law, the district courts have wide discretion to actually apply and to award sanctions. And they're not limited to typical just, you know, damages under 284 and or attorney's fees. And, in fact, obviously we're not seeking under a statutory provision. We are seeking attorney's fees and costs that are awarded under the contempt findings which is all based on Third Circuit law. And so they're not really truly co-extensive with damages and attorney's fees.  Well, let me ask you this. Under Bosch v. Pilon, if this was a garden variety, patent infringement, civil action, and you were seeking the exact same kinds of money that you're seeking in the sanctions proceeding, what would happen? Would there be jurisdiction here? If it was not a contempt proceeding and it was just... It seems to be that... Well, it's kind of unclear with Bosch is whether it was limited only in circumstances where it was bifurcated. So if you're asking if it's truly exactly like the Bosch case where damages and attorney's fees were bifurcated in the willfulness determination, yes, it seems to be. That's the court's ruling at this point that under 1292C2, in a regular infringement action, not in a contempt proceeding, the fact that there's still attorney's fees or lost profits to be awarded would not deter this court from being able to hear the underlying merits of the case. However, in this case, and in all of the cases, we have been able to find there's not a single case to date with the Supreme Court or any other circuit that has found that a civil contempt order is appealable before sanctions have been meted out. And in the case that, Judge Clevenger, that you've been discussing with my fourth-in-counsel is the Alexander case, not the Anderson case, just to clarify. And in that case, actually the holding was that there was a civil contempt, that the actual witnesses were found to be in contempt, they just had not been fined yet. So contrary to Bridgeport's arguments, there was a finding of contempt, so they were contemptors, but because the punishment had not been meted out, the court found that there was no jurisdiction. Now, of course, that was a 1291 case, but here we have the LMK case, and the LMK case is directly all on board with the facts of this case, where you have a finding that the products were deemed to be colorable imitations, and no sanctions had actually been imposed. It's not precedential, though, right? That is correct. And it's before Bosch v. Pilon, right? That is absolutely correct. However, although it's not binding, it is under this Court's rule of 32.1. It is actually still persuasive, and it actually relies on two cases, which are, or excuse me, one case, it relies on the Integris case. So, for example, for the issue of whether or not this falls under A1, that is binding on this Court, and I'll talk about that in a minute, but with respect to C2, it cites the Ninth Circuit's decision in Donovan. Now, Donovan relies on the Alexander case that Judge Klobuchar was asking my opposing counsel about, and that also, again, we believe, is binding. The other thing that... Are there any rules here about how you're supposed to get your thumb on the scale one way or the other? For example, it sure sounds like there's a heavy thumb on the scale if you have a contempt order and you don't actually have your punishment meted out, but if you're talking about in terms of whether or not an injunction has been modified as opposed to enforced, is there any law that says I'm supposed to be careful and I'm supposed to assume that the Court was merely enforcing as opposed to interpreting? Well, yeah. I mean, I think, yes, definitely. The Integris case, I think, is directly on point for this case, is that when there has been a decision that the injunction... Excuse me.  which in this case, contrary to opposing counsel's arguments, there has been absolutely no modification to the injunction. It is verbatim, the same language that was used before. The only thing the Court did, as we listed in our brief, we showed you exactly the... Well, I mean, what's happening here is your adversary is saying, we ought to look behind that and say, look, he said, now I've got a situation where my product is enjoying where we're talking about infringement of a method patent, so clearly I'm in a different place than I was before. What I'm trying to get at is that the only reason why we're not talking about the merits of this case is because there's a jurisdictional hurdle which will be easily solved if we say there's no jurisdiction. Then somebody's going to go downstairs, they're going to take care of the damages, they're going to take care of the attorney's fees in a New York minute, they're going to be right back up here and rebrief the case and reuse judicial resources. So that's why I'm asking whether there's any notion here that you should say, well, if the case looks a little bit close, go ahead and say it's a modification of the injunction instead of an interpretation. Well, it's a very good question. Of course, we did move to dismiss before briefs were filed because we did actually think that was really more... And the issue was kicked over to us. Exactly. And I think that's because with some of the arguments made in some of the briefs by Bridgeport that there was maybe some issue and the court wanted to have more facts. But the fact is that under INTEGRIS, and I don't think really, subject matter jurisdiction is, as you said, it's a threshold issue. So the facts are that you can't find a modification when there isn't one. The fact is, this court has found in additive controls... Why can't I say, I can look past, yes, indeed, the injunction says in your injunction you got caught. It's not colorfully different. But if I buy the argument that there's been a significant change here, either I use the claim interpretation argument, although it was present in ADVOA, it wasn't decided on that ground. Exactly. And in additive controls, in KSM, and in Muriel, this court said that having a claim construction in a contempt proceeding is absolutely acceptable. And in fact, the only thing that all the court cases have said, especially Muriel, which is the most recent and the most on point, they said that you just have to ensure that the claim construction... I won't kick the door anymore, but it just seems to me to be a waste of resources. You're going to be back here. We're really in favor of you on jurisdiction. You're going to be back here and print the second half of your brief because nothing's going to change on whether or not these products are or are not colorable limitations. And we're right back here and this panel is going to be recomposed, right, to have to sit here and hear the argument again. I absolutely agree, Your Honor. And in fact, I mean, we actually offered the defendant to stay the appeal so that we could finish the sanctions hearing. But unfortunately, it's not correct that they're not opposing. I mean, they're opposing sanctions. There's been no award. In fact, my client doesn't even have the benefit of a bond. So there's been absolutely no award against them. To say that they've been sanctioned is not true. They're subject to the same injunction that they were subject to since 2004. The fact is, though, they've just been ignoring it. They have been found already to be in violation of the settlement agreement that this same injunction was issued from. And these exact products, actually, were already found to be infringing and colorable limitations in a jury verdict in 2009 that was affirmed by this court.  for whether the modification, whether there's a modification is whether it changes the legal relationship. That's absolutely true. And I understand your argument that it's not true. It's not true. I understand your argument that the district court didn't change any of the words of the injunction. And that seems right. But if, by coming up with a new claim construction, he so dramatically changed the scope of the injunction that it changes the legal interpretation, can't we look beyond the words and say that is a modification? Two reasons why that's not true, Your Honor. First of all, of course, there never was a previous construction of this term. But that doesn't mean that taking the word cylindrical and coming up with a definition of it somehow majorly expanded it. This argument about the fact that it's now going after product versus the method, again, that's not true. They always, and if you look at the original injunction, they always agreed to not make, sell, or offer for sale. So the original injunction, even though it was a method claim, was against the sales of the product. So this is a collateral attack that they're making on the same exact language and the time to appeal. You can't sell a method claim. No, but it's just the language of the injunction. So the injunction language did not change. But they actually were enjoined from, and basically, there is no non-infringing, there is no non-infringing use of these products. In fact, we put on a strong case of indirect infringement, and they did not actually put on a single defense to indirect infringement at the trial. They actually based their entire defense on their claim construction and their colorable imitation defense. So the fact that now, post, in fact, this is something that's going on in the district court today, is that they're actually trying to make and they're actually trying to argue now that there's all these non-infringing defenses. We had four days of hearings, they did not present a single issue on that. So that's, again, a very questionable argument. But as far as the words of the injunction, in additive controls and in Muriel, Your Honor, doing a claim construction does not mean that there's been, and in fact, in Evo, the case that you raised, doesn't mean that there's been a modification. If this court would like to hear about the merits, I'm happy to talk about the merits because we think the evidence was overwhelming and, you know, we'd be happy if there's an affirmance of the case that we could go back down and finish the sanctions of the case. If the court finds that you have jurisdiction, we think there's no question that the Bridgeport has not met their error, met their burden of showing that the court clearly erred in finding that the products were colorable imitations. The evidence was overwhelming to show that they had the same, substantially the same function, achieved substantially the same results. And Bridgeport's expert and their arguments against it, as the judge noted, were inconsistent and not, basically, they changed their position and really not credible. And so the court did not clearly err in finding that these products were colorable imitations and infringed the patent as properly construed. Now, with respect to the claim construction as well, if the court would like to talk about that, I'd be happy to. I don't want to go into jurisdiction or, excuse me, the merits if you would like to continue to talk about jurisdiction or if you have any further questions on jurisdiction. Just one question. The limitations that are being contested now for infringement, those were not the same limitations that were being debated ten years ago during the original litigation, right? Surrounding was actually contested and, in fact, it was contested all the way up and through the jury verdict and, in fact, Bridgeport... But there are some limitations. The only term... That are brand newly contested, right? That is true. The only term that they're contesting and they're claiming is some major modification is to the cylindrical surface. But the fact is the reason why that should not be an issue is that that would basically put the question of any time the accused infringer and accused of violating an injunction, they would just try to come up with a new thing. But really, under this court's binding in PIVO, you just basically... You have to look at what were the features required to prove infringement in the original case and determine whether or not there was a significant modification. Right. I guess I'm just wondering, is there a case out there where it was appropriate to do a contempt proceeding when the debate was over a new claim limitation that wasn't actually contested during the original litigation? Yes. Additive controls case, the KSM case, the Muriel case. In all of those cases, they raised the issue that there was a new claim construction and the fact... New claim construction on the same limitation. Yes. And in fact, because really there was no claim construction in this case because they consented to infringement. That's part of the problem because we were trying to match apples to apples for purposes of how you run the contempt proceeding. We don't quite know. Well, to be honest, we would slightly disagree with that. Bridgeport claims that, but in reality, we submitted a claim chart in 2003, and we always maintained that the external clinical surface was everything forward of the flange excluding the lips. It was only after they realized that their own witness admitted that his new claim construction now was inconsistent with the finding of infringement of the enjoined connector that he then changed his position to say, oh, there's three external surfaces, which, of course, is not supported at all by the patents, and that's why the judge, it's one of the only things in particular that the judge, well, it's one of the things the judge pointed out. You say there's no question. I mean, that was one of the things where they really were inconsistent in their  But just to end on one point about the jurisdiction, Your Honor, is that one of the reasons why the Supreme Court and the other circuits have always found, and this court found in LMK, is when you don't have a modification to the injunction, because it's basically the same language, same products that are being accused, and they were always required to not make colorable limitations of the enjoined connectors, but more importantly is that Arlington has not actually been awarded any of the sanctions that they're entitled to as the innocent party in this case. And so therefore we would ask this court to set aside and let the courts and the district court finalize its decision on sanctions, and we will be back here on the merits. Thank you. Thank you, Mr. McLennan. Mr. Anderson, three. Thank you very much, Your Honor. I appreciate it. First, on jurisdiction, I think this court has made it clear that a post judgment contempt order is immediately appealable when all that remains is an accounting of damages. The only difference here is that there is also the determination of the quantification of attorney fees, and under the Ray Hallett case and the other decisions made it clear that attorney fees don't prevent a decision from being immediately appealable. It's a final judgment. Second, under 1292C1, the old injunction, there was no construction of the two limitations in issue here, and it did not say you cannot sell this product. Here, if you look at page A, 29 and 30, the injunction is much broader. It says basically we can't sell, we're permanently enjoined from selling these products. That's broader than anything that any reasonable interpretation could have been from the earlier injunction. If you have an injunction in a method case, you're enjoined from infringing the method. Now we have an injunction that permanently enjoins us from selling these products, even though they can be used in a non-infringing manner. Now, on the merits... Your adversary is contesting that. Where is the evidence of non-infringing use? I'm sorry? You're saying that there's non-infringing use of these articles? Yes. And your adversary got up here just a second ago and if I correctly heard her through my pre-hearing aid, she said you haven't made that evidence. I refer the court to appendix pages A3640-43. Did the original injunction order enjoin you from making, using, and selling the old connectors? The original injunction, the language was the same language that was used for the settlement of three products. It was an injunction in a method case. You can't take a method patent and enjoin the sale of products. Why not? It was a settlement. You agreed to it even if you couldn't have been ordered that under a judgment. If you agreed to a settlement that said we agree not to sell these products, which I'm looking at the language of the injunction, it pretty much says that. You agree not to sell them and you agree not to sell colorable imitations. That's what you agreed to. We didn't have a construction like we have here of limitations that were never an issue. Isn't when you agree to colorable imitations you're opening yourself up to the district court deciding future products may be a colorable imitation when a claim construction you might not agree with. You have to have notice of what you might be  at. You have to have one or more external surfaces. Once you try to force it into being one external surface and only one, then you have a wrong construction of cylindrical which is wrong. Thank you very much. I appreciate it.